*Return*

# State of Tennessee

## In the Circuit Court of Hamilton County

USAA General Indemnity Company
_____
**Plaintiff**

No. 22C361

Hansgrohe, Inc.
_____
**Defendant**

# SUMMONS

TO: Hansgrohe, Inc., c/o Donna Armstrong,1490 Bluegrass Lakes Parkway, Alpharetta, GA 30004
_____
**Defendant**                                    **Address**

_____
**Defendant**                                    **Address**

_____
**Defendant**                                    **Address**

You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court of Hamilton County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Circuit Court Clerk of Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

WITNESSED and issued this 23rd day of March, 20 22

CIRCUIT COURT OF HAMILTON COUNTY
500 COURTHOUSE
625 GEORGIA AVENUE
CHATTANOOGA, TENNESSEE 37402
423/209-6700

Larry L. Henry, Circuit Court Clerk

By _____
**Deputy Circuit Court Clerk**

Attorneys for Plaintiff  Gail Vaughn Ashworth, Esq.

511 Union Street, Suite 800, Nashville, TN 37219-1743
_____
**Address**

Plaintiff's Address  9800 Fredericksburg Road, San Antonio, TX 78288
_____

Received this _____ day of _____ , 20 _____

/S/ _____
**Deputy Sheriff**

 ADA COORDINATOR, FOR ASSISTANCE CALL (209-7500)


**EXHIBIT A**

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____, 20_____, I:

| | served this summons and complaint/petition on

in the following manner:

| | failed to serve this summons within 30 days after its issuance because

_____
Sheriff/Process Server

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _25TH_ day of _March_ , 20_22_ I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the compliant in Docket No.

_22C361_ to the defendant, _Hansgrohe, Inc._ . On the _31ST_ day of _March_ 20_22_ , I received the return receipt for said registered or certified mail, which had been signed by _illegible_ on the _28TH_ day of _March_ , 20_22_. Said return receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS
_1ST_ DAY OF _Apr. l_ , 20_22_

_Joanne Bucco_
____ ✓ ____ NOTARY PUBLIC or _____ DEPUTY CLERK
MY COMMISSION EXPIRES: _1/3/23_

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY
OR OTHER PERSON AUTHORIZED
TE TO SERVE PROCESS

JOANNE BUCCO
STATE OF
TENNESSEE
NOTARY
PUBLIC
DAVIDSON COUNTY
MY COMMISSION EXPIRES 1-3-2023

## NOTICE

TO THE DEFENDANT(S);

Tennessee law provides a four thousand dollar ($4,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

_See attached_

STATE OF TENNESSEE
COUNTY OF HAMILTON

I, Larry L. Henry, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

LARRY L. HENRY, CLERK

(To be completed only if copy certification required.)

By: _____ D.C.

# USPS Tracking®

FAQs >

## Track Another Package +

**Tracking Number:** 70212720000207289508

Remove ✕

Your item was delivered to an individual at the address at 12:58 pm on March 28, 2022 in ALPHARETTA, GA 30004.

USPS Tracking Plus® Available ∨

## ☑ Delivered, Left with Individual

March 28, 2022 at 12:58 pm
ALPHARETTA, GA 30004

**Get Updates** ∨

### See More ∨

Feedback

Go to

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits.<br><br>1. Article Addressed to:<br><br>Hansgrohe , Inc.<br>c/o Donna Armstrong<br>1490 Bluegrass Lakes Parkway<br>Alpharetta, GA 30004 | A. Signature<br>X _____ ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)     C. Date of Delivery<br>_____   3 28 22<br>D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 7065 1225 8966 49 | 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. Article Number (Transfer from service label)<br>7021 2720 0002 0728 9508 | ☐ ...stricted Delivery |
| PS Form 3811, July 2020 PSN 7530-02-000-9053 | Domestic Return Receipt |

Serve

# State of Tennessee

## In the Circuit Court of Hamilton County

USAA General Indemnity Company
_____
Plaintiff

Hansgrohe, Inc.
_____
Defendant

No. 22C361

# SUMMONS

TO: Hansgrohe, Inc., c/o Donna Armstrong,1490 Bluegrass Lakes Parkway, Alpharetta, GA 30004
_____
Defendant                                    Address

_____
Defendant                                    Address

_____
Defendant                                    Address

You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court of Hamilton County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Circuit Court Clerk of Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

WITNESSED and issued this 23rd day of March , 20 22

CIRCUIT COURT OF HAMILTON COUNTY
500 COURTHOUSE
625 GEORGIA AVENUE
CHATTANOOGA, TENNESSEE 37402
423/209-6700

Larry L. Henry, Circuit Court Clerk

By _____
Deputy Circuit Court Clerk

Attorneys for Plaintiff    Gail Vaughn Ashworth, Esq.

511 Union Street, Suite 800, Nashville, TN 37219-1743
_____
Address

Plaintiff's Address    9800 Fredericksburg Road, San Antonio, TX 78288
_____

Received this _____ day of _____ , 20 _____

/S/_____
Deputy Sheriff

ADA COORDINATOR, FOR ASSISTANCE CALL (209-7500)

# State of Tennessee,
## County of Hamilton

I, Larry L. Henry, Clerk of the Circuit Court, in and for the State and County aforesaid, hereby certify that the within and foregoing is a true and correct copy of the original writ of summons issued in this case.

**Larry L. Henry**, Circuit Court Clerk

By _____ D.C.

## OFFICERS RETURN

I certify that I served this summons together with the complaint as follows:

☐ On, _____, 20 _____, I delivered a copy of the summons and complaint to the defendant, _____

☐ Failed to serve this summons within 90 days after the issuance because: _____

**Hamilton County Sheriff**

_____
Deputy Sheriff

## CLERK'S RETURN

I hereby acknowledge and accept service of the within summons and receive copy of same, this _____ day of _____ 20 _____.

_____
Defendant

**Larry L. Henry**, Circuit Court Clerk

By _____ D.C.

## Notice to Defendant(s)

Tennessee law provides a ten thousand ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

# IN THE CIRCUIT COURT FOR HAMILTON COUNTY, TENNESSEE

USAA GENERAL INDEMNITY )
COMPANY a/s/o WILLIAM )
TONKIN )
      Plaintiff, )
       )
      v. )
       )
HANSGROHE, INC., a foreign )
corporation; JOHN and JANE DOES )
I-X; ABC CORPORATION I-X; )
and/or BLACK AND WHITE )
PARTNERSHIPS I-X, )
       )
      Defendants. )

No.: 22C361

12 Person Jury Demand

## COMPLAINT

COMES NOW, the Plaintiff, USAA General Indemnity Company a/s/o William Tonkin, in the above captioned matter, by and through its undersigned attorneys, and for a cause of action against the Defendants would state and show as follows:

## PARTIES

1. Plaintiff, USAA GENERAL INDEMNITY COMPANY, (hereinafter "Plaintiff") is an insurance company organized under the laws of the State of Texas, with a principal place of business located at 9800 Fredericksburg Road, San Antonio, TX 78288.

2. At all times relevant hereto, Plaintiff was authorized to issue policies of insurance in the state of Tennessee.

3. At all times relevant hereto, Plaintiff's Insured, William Tonkin, (hereinafter "Plaintiff's Insured") owned, leased, or otherwise occupied the property at 7508 Island Manor Drive, Harrison, TN 37341 (hereinafter, "The Property").

1

4. Prior to March 31, 2019 (hereinafter referred to as "Date of Loss"), Plaintiff issued a policy of insurance to Plaintiff's Insured; said policy covering The Property, including its structure and/or contents, and insuring against other losses in effect on the date of loss.

5. Defendant, Hansgrohe, Inc. (hereinafter "Hansgrohe"), is a corporation organized under the laws of the State of Georgia, with a principal place of business and registered office located at 1490 Bluegrass Lakes Parkway, Alpharetta, GA 30004.

6. Hansgrohe designs, manufactures, distributes, sells and performs other services related to various plumbing fixtures and supplies. These fixtures include, but are not limited to water faucets that include pre-attached and/or supplied flexible water supply lines.

7. Hansgrohe promotes on its webpage that its products are available through its dealer, Ferguson Enterprises, 4100 Amnicola Highway, Chattanooga, TN 37406-1002, with a link to its "partner website."

8. John and Jane Doe(s), I-X, Black & White Partnerships, I-X and ABC Corporations, I-X, are fictitiously named Defendants who may be wholly or partially responsible or at fault for Plaintiff's damages. If and when the true names of these Defendants and the extent of their involvement with regard to the facts which form the basis of this lawsuit become apparent, if any, this pleading will either be amended or leave to amend will be sought from this Court.

9. Upon information and belief, Defendant, Hansgrohe, was/were a "Seller" and/or a "Manufacturer" as defined in T.C.A §29-28-102, *et seq,* and was/were engaged in business of manufacturing and/or selling water supply lines and component parts, including the water supply line and component parts which are the subject of this cause of action.

2

## JURISDICTION AND VENUE

10.     This Honorable Court may exercise jurisdiction over this Defendant and this controversy as the Defendant has caused the incident to occur in Tennessee out of which the claim which is the subject of this complaint arose and Defendant, Hansgrohe, has sufficient and/or minimum business contacts with the State of Tennessee.

11.     Defendant, Hansgrohe, has caused the incident to occur in Hamilton County out of which the claim which is the subject of this complaint arose, and Defendant, Hansgrohe, regularly and continually conducted a substantial amount of business in Hamilton County, and therefore venue is proper in Hamilton County.

## FACTUAL ALLEGATIONS

12.     On or about March 31, 2019, a flexible stainless-steel braided water supply line attached to a water faucet (hereinafter "Water Supply Line"), designed, manufactured, distributed and sold by Defendant, Hansgrohe, failed, causing extensive water damages to The Property.

13.     At all times material hereto, Defendant, Hansgrohe, designed, manufactured, and offered for distribution and sale of water supply lines with the specific purpose that they be installed by builders, plumbers, and consumers in homes and other buildings throughout the United States, including Hamilton County, Tennessee.

14.     At all times relevant hereto, Plaintiff's Insured owned and/or occupied The Property.

15.     Prior to the Date of Loss, Plaintiff issued a policy of insurance to the Plaintiff's Insured and provided insurance to the Plaintiff's Insured for his interest in real and personal property at The Property, as well as for other consequential damages, including but not limited to, loss of use of the property.

3

16. Said insurance policy provided insurance coverage and benefits to the Plaintiff's Insured for damages and losses that occurred at The Property, including damages and losses caused by water.

17. The water loss involved a Water Supply line equipped with a braided stainless-steel sheathing or cover over the hose which is prone to corrosion, fracture, and failure, resulting in the bursting of the hose during the ordinary and intended use of the Water Supply Line.

18. Consumers who purchased the Defendant, Hansgrohe's, water supply lines had no way of knowing that the water supply lines were defective at the point of sale.

## COUNT I – STRICT LIABILITY
### DESIGN DEFECT

19. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

20. At all times material hereto, Defendant, Hansgrohe, acting though its authorized agents, servants and employees, was regularly engaged in the business of designing, manufacturing, marketing, distributing and selling water supply lines which included, as a component part, stainless-steel braiding, which is the subject of this action.

21. The Water Supply Line, including the stainless-steel braiding, was sold by Hansgrohe and then installed in The Property owned, leased, or occupied by Plaintiff's Insured.

22. The Water Supply Line sold by Defendant, Hansgrohe, which is the subject of this action, was defective, unfit, unmerchantable, and unreasonably dangerous by reason that the stainless-steel braiding was excessively prone to failure, leakage, and causing property damage during the ordinary and intended use of the Water Supply Line when this product was in Defendant, Hansgrohe's, possession and control.

4

23.     Plaintiff's Insured was a member of the class of people that Defendant, Hansgrohe, should reasonably have foreseen as being subject to the harm caused by the Water Supply Line's defective and unreasonably dangerous condition.

24.     Defendant's Water Supply Line was defective and unreasonably dangerous through design defects by reason that:

a.  The Water Supply Line would fail, leak, and cause water damage during the ordinary and foreseeable use of such product, contrary to the reasonable expectation of users and consumers of such products;

b.  The Water Supply Line was unreasonably dangerous and not merchantable for the ordinary and intended use of this product due to the unreasonable risk of failure, leakage, and resulting water damage to real and personal property;

c.  The unreasonable risk of failure, leakage, and water damage to real and personal property greatly outweighed any benefit of the design of the Water Supply Line as compared to the alternative plumbing products which this Water Supply Line was intended to replace, or compared to feasible alternative designs of flexible water supply lines;

d.  Failing to utilize design techniques and material science known within the industry at the time the Water Supply Line was designed to design a water supply line which would function as intended and not fail during ordinary intended use;

e.  Defendant, Hansgrohe designed the Water Supply Line without adequate consideration for appropriate material selection with regard to both the flexible hose itself, and the stainless-steel sheathing or covering of the hose;

f.  The braided stainless-steel sheathing or covering of the hose was prone to excessive corrosion, fracturing, and failure during the ordinary and intended use of the Water Supply Line;

5

g. The braided-stainless steel sheathing or covering was designed without adequate consideration of the corrosive elements within the environment where the Water Supply Line could reasonably be expected to be installed and used, resulting in accelerated corrosion and failure of the braided stainless-steel sheathing, or covering and bursting of the hose;

h. The Water Supply Line was designed without adequate consideration of water pressures to be experienced by the hose or changes and fluctuations in such water pressure; and,

i. The braided stainless-steel sheathing or covering was designed without adequate consideration of movement and abrasion resulting from fluctuations in water pressure, contributing to the failure of the braided stainless-steel sheathing or covering.

25. As a direct and proximate result of the defective, unsafe, unfit, and unmerchantable condition of the Water Supply Line described above, the water loss was caused to occur and Plaintiff's Insured was caused to suffer damage and destruction of real property and personal property, loss of use of the property, and incidental expenses associated with cleanup and debris removal.

26. Pursuant to the policy of insurance issued by the Plaintiff to its insured, Plaintiff has made payments to its insured in the total amount of $267,229.86 as a result of the loss described above.

27. By virtue of the aforesaid payments and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of the Plaintiff's Insured to the extent of such payments.

28. In the event that Plaintiff becomes obligated to pay additional sums for the loss in the future, Plaintiff prays for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

6

## COUNT II – STRICT LIABILITY
## MANUFACTURING DEFECT

29.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

30.     At all times material hereto, Defendant, Hansgrohe, acting though its authorized agents, servants and employees, was regularly engaged in the business of designing, manufacturing, marketing, distributing and selling water supply lines which included, as a component part, stainless-steel braiding, which is the subject of this action.

31.     The Water Supply Line, including the stainless-steel braiding, were sold by Defendant, Hansgrohe and then installed in The Property owned, leased, or occupied by Plaintiff's Insured.

32.     The Water Supply Line sold by Defendant, Hansgrohe, which is the subject of this action, was defective, unfit, unmerchantable, and unreasonably dangerous by reason that the stainless-steel braiding was excessively prone to failure, leakage, and causing property damage during the ordinary and intended use of the Water Supply Line when these products were in Defendant, Hansgrohe's, possession and control.

33.     Plaintiff's Insured was a member of the class of people that Defendant, Hansgrohe, should reasonably have foreseen as being subject to the harm caused by the Water Supply Line's defective and unreasonably dangerous condition.

34.     Defendant's Water Supply Line was defective and unreasonably dangerous through manufacturing defects by reason that:

  a.  The stainless-steel sheathing or covering of the hose did not meet design or manufacturing specifications; and,

  b.  The flexible inner hose inside of the stainless-steel sheathing or covering contain manufacturing defects.

7

35. As a direct and proximate result of the defective, unsafe, unfit, and unmerchantable condition of the Water Supply Line described above, the water loss was caused to occur and Plaintiff's Insured was caused to suffer damage and destruction of real property and personal property, loss of use of the property, and incidental expenses associated with cleanup and debris removal.

36. Pursuant to the policy of insurance issued by the Plaintiff to its insured, Plaintiff has made payments to its insured in the total amount of $267,229.86 as a result of the loss described above.

37. By virtue of the aforesaid payments and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of the Plaintiff's Insured to the extent of such payments.

38. In the event that Plaintiff becomes obligated to pay additional sums for the loss in the future, Plaintiff prays for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

## COUNT III – STRICT LIABILITY
## FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION

39. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

40. At all times material hereto, Defendant, Hansgrohe, acting though its authorized agents, servants and employees, was regularly engaged in the business of designing, manufacturing, marketing, distributing and selling water supply lines which included, as a component part, stainless-steel braiding, which is the subject of this action.

41. The Water Supply Line, including the stainless-steel braiding, were sold by Defendant, Hansgrohe, and then installed in The Property owned, leased, or occupied by Plaintiff's Insured.

8

42. The Water Supply Lines that Defendant, Hansgrohe, designed, manufactured, marketed, distributed, and sold, was defective for lack of adequate warnings and instructions when they left Defendant, Hansgrohe's, possession and control.

43. Plaintiff's Insured is a member of the class of persons that Defendant, Hansgrohe, should reasonably have foreseen as being subject to the harms caused by the Water Supply Line's defective condition.

44. Defendant, Hansgrohe, knew or should have known, that the Water Supply Line posed a latent hazard and that consumers would not comprehend and be able to avoid without adequate warnings and instructions.

45. Defendant, Hansgrohe, knew or should have known, that typical consumers or end users, including Plaintiff's Insured would use the Water Supply Line without knowledge, understanding, or appreciation that the Water Supply Line had a limited or short service life in terms of years, after the expiration of which failure, leakage, and property damage would become unreasonably likely and that such persons would not know to take precautions to prevent failure, leakage, and property damage, such as periodically inspecting the Water Supply Line for signs of corrosion, fracturing, and failure, and replacing the Water Supply Line before the expiration of the useful service life.

46. The braided stainless-steel sheathing was prone to excessive corrosion when exposed to certain common household cleaning agents and chemicals, such exposure being foreseeable during the ordinary and intended use of the product.

47. Defendant, Hansgrohe, knew or should have known, that the average purchaser, consumer, or end user would not be aware of the tendency of certain household cleaning agents and chemicals to cause excess corrosion to the braided stainless-steel sheathing of the Supply

9

Line, would not be aware which household cleaners and chemicals might cause such accelerated corrosion, and would not take measures to protect against such exposure.

48. The Water Supply Line was defective because it was not supplied with adequate and necessary warnings reasonably calculated to reach the purchasers, end users, and consumers of such products, alerting such end users and consumers of such products to the nature of the hazard, the gravity of the hazard, and how to avoid the hazard.

49. Had the purchasers, end users, and consumers of this Water Supply Line, including Plaintiff's Insured, had been adequately warned concerning the likelihood that the Water Supply Line would fail, he would have taken steps to avoid damages by inspecting the Water Supply Line for corrosion, fracture, or failure, replacing the Water Supply Line before the expiration of its useful life, protecting the Water Supply Line from exposure to cleaners and household chemicals causing corrosion, or not purchasing or using such Water Supply Line.

50. Defendant, Hansgrohe, after learning that its water supply lines could suddenly fail as a result of the stainless-steel braiding corroding, had a post-sale duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of their water supply lines, even when used for their intended purpose.

51. Pursuant to the policy of insurance issued by the Plaintiff to its insured, Plaintiff has made payments to its insured in the total amount of $267,229.86 as a result of the loss described above.

52. By virtue of the aforesaid payments and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of the Plaintiff's Insured to the extent of such payments.

10

53.     In the event that Plaintiff becomes obligated to pay additional sums for the loss in the future, Plaintiff prays for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

## COUNT IV – NEGLIGENCE
## NEGLIGENT DESIGN

54.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

55.     At all times material hereto, Defendant, Hansgrohe, acting through its duly authorized agents, servants, and employees, was regularly engaged in the business of designing, manufacturing, marketing, distributing, and selling the Water Supply Line which is the subject of this action.

56.     The Water Supply Line, including the stainless-steel braiding, were sold by Defendant, Hansgrohe and then installed in The Property owned, leased, or occupied by Plaintiff's Insured.

57.     The Water Supply Line that Defendant, Hansgrohe, designed, manufactured, marketed, distributed, and sold was defective, unfit, unsafe, and unmarketable for the ordinary and intended use of such products at the time such products left the possession and control of the Defendant.

58.     Plaintiff's Insured is a member of the class of persons that Defendant, Hansgrohe, should reasonably have foreseen as being subject to the harms caused by the Water Supply Line's defective condition.

59.     As the designer, manufacturer, and seller of such products, Defendant, Hansgrohe, owed a duty to the Plaintiff's Insured to exercise the ordinary care expected from the designer, manufacturer, and seller of such products to provide safe, and merchantable products, fit for the ordinary and intended use of the products, together with any necessary and adequate warnings.

11

60.     Defendant, Hansgrohe, breached these duties, failed to exercise ordinary care, and was negligent by:

a. Failing to give adequate consideration to the typical environment in which the Water Supply Line would be used, and utilize materials appropriate for such an environment that would not fail during ordinary and expected use;

b. Failing to exercise necessary care in order to choose materials which would not corrode, fracture, or fail during ordinary and intended use;

c. Failing to exercise ordinary care so as to give adequate consideration to changes and fluctuation in water pressure that would cause expansion and contraction of the braided stainless-steel sheathing or cover, resulting in fracturing or failure of such braided stainless-steel;

d. Failing to exercise ordinary care so as to give adequate consideration to material strengths and decreases in material strengths over time given the use and environment in which the Water Supply Line would likely be used, including the foreseeable presence of corrosive chemicals and changes in fluctuation of water pressure;

e. Failing to exercise ordinary care to give adequate consideration to the material strengths of the hose body of the Water Supply Line in relation to the stresses placed on the material by water pressure and changes in water pressure;

f. Failing to exercise ordinary care to adequately test the Water Supply Line under the conditions of and in the environment of typical use to determine any propensity for failure;

g. Failing to exercise ordinary care to adequately test the Water Supply Line to determine the reasonably expected useful life of the water supply line under the conditions of normal and intended use;

12

h.   Failing to exercise ordinary care as to design a Water Supply Line with an adequately long expected service life, meeting the expectations of normal consumers;

i.   Failing to exercise ordinary care to advise end users and consumers of the Water Supply Line of the hazards of the shorter than expected service life of the Water Supply Line, the gravity of that hazard, and how to avoid that hazard;

j.   Failing to provide necessary and adequate warnings reasonably calculated to reach end users and consumers advising of the need to periodically inspect the Water Supply Line for corrosion, fracturing, failure and the need to replace the Water Supply Line before the expiration of the expected useful life so as to avoid damage to property;

k.   Continuing to sell the defective and unfit water supply lines after having reason to know, by way of the many reported failures of the supply lines, that the water supply lines were defective and prone to failure;

l.   Failing to exercise ordinary care so as to adequately investigate the cause of reported failures of the water supply lines so as to discover the defective and unfit condition of the water supply lines;

m.   Failing to utilize design techniques and material science known within the industry at the time the Water Supply Line was designed to design a water supply line which would function as intended and not fail during ordinary intended use;

n.   Failing to give due consideration to the amount and severity of water damage which could occur as the result of the failure of the Water Supply Line; and,

o.   Defendant, Hansgrohe, negligently designed the water supply lines in other ways, under the circumstances, to be determined.

61.   As a direct and proximate result of Defendant, Hasngrohe, aforesaid negligent acts and/or omissions, failure of the Water Supply Line at the property owned, leased, or occupied by

13

Plaintiff's Insureds occurred, causing Plaintiff's Insured to suffer damage to his real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

62.     Pursuant to the policy of insurance issued by the Plaintiff to its insured, Plaintiff has made payments to its insured in the total amount of $267,229.86 as a result of the loss described above.

63.     By virtue of the aforesaid payments, and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitable, and contractually subrogated to the rights of the Plaintiff's Insured to the extent of such payments.

64.     In the event that Plaintiff became obligated to pay additional sums for this loss in the future, Plaintiff prays for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

## COUNT V – BREACH OF WARRANTY

65.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

66.     At all times material hereto, Defendant, Hansgrohe, acting through its duly authorized agents, servants, and employees was regularly engaged in the business of designing, manufacturing, marketing, and selling water supply lines.

67.     Defendant, Hansgrohe, impliedly and expressly warranted that the Water Supply Line was safe, fit, and merchantable for the intended and ordinary use of the Water Supply Line.

68.     Defendant, Hansgrohe's, implied warranty of merchantability accompanied the sale of the water supply line which was installed and placed in use in the property owned, leased, and occupied by Plaintiff's Insured.

14

69.     The Water Supply Line was unmerchantable, unfit, and unsafe for the ordinary and intended use of such water supply line because the Water Supply Line would fail, leak, and cause property damage during such ordinary and intended use.

70.     Any effort by Defendant, Hansgrohe, to disclaim or limit its responsibility for its defective Water Supply Line would be unconscionable under the circumstances because Defendant, Hansgrohe, knew, or should have known, its Water Supply Line was unfit for normal use.

71.     Defendant, Hansgrohe, breach its warranty by reason that:

a.   The Water Supply Line was prone to failure and leakage, foreseeably causing damage to real and personal property, during the ordinary and intended use of the product;

b.   The Water Supply Line was sold without necessary and adequate warnings pertaining to the need to make regular inspections for corrosion, failure, and the need to replace the Water Supply Line before the expiration of useful service life;

c.   The useful service life of the Water Supply Line was inadequate and less than anticipated by the normal end user and consumer; and,

d.   The stainless-steel sheathing or covering of the Water Supply Line would corrode, fracture, and fail in the environment of normal use resulting in the rupture of the hose and leakage of water.

72.     As a natural and foreseeable consequences of Defendant, Hansgrohe's, breach of warranty, Plaintiff's Insured suffered failure of the Water Supply Line, damage to his real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

15

73. Pursuant to the policy of insurance issued by the Plaintiff to its insured, Plaintiff has made payments to its insured in the total amount of $267,229.86 as a result of the loss described above.

74. By virtue of the aforesaid payments, and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of the Plaintiff's Insured to the extent of such payments.

75. In the event that Plaintiff became obligated to pay additional sums for this loss in the future, Plaintiff prays for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

## COUNT VI – MALFUNCTION/CIRCUMSTANCIAL EVIDENCE OF DEFECT

76. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

77. At all times material hereto, Defendant, Hansgrohe, acting through its duly authorized agents, servants, and employees was regularly engaged in the business of designing, manufacturing, marketing, and selling water supply lines.

78. A flexible Water Supply Line that was designed, manufactured, marketed, and sold by Defendant, Hansgrohe, was installed and put into use at The Property owned, leased, or occupied by the Plaintiff's Insured.

79. The flexible Water Supply Line designed, marketed, and sold by Defendant, Hansgrohe, which was installed and placed in use at The Property described above failed during the ordinary and intended use of such product, causing leakage, and damage to real and personal property.

80. Plaintiff's Insured did nothing to cause the malfunction and failure of the Water Supply Line installed at The Property.

16

81.     Given the static, in place use of the flexible Water Supply Line described above, the age of the Water Supply Line at the time of such failure, the nature of the failure, and actions of those other than actions of Defendant, Hansgrohe, can be ruled out as a cause of failure of the flexible Water Supply Line and the resulting damage.

82.     Plaintiff is entitled to a presumption of defect based upon the circumstantial evidence described above.

83.     As a direct and proximate result of the defective condition of the flexible Water Supply Line designed, manufactured, marketed, and sold by Defendant, Hansgrohe, water loss was caused to occur at The Property owned, leased, or occupied by Plaintiff's Insured with the result that the Plaintiff's Insured was caused to suffer damage to real and personal property, loss of use of said property, and incidental expenses associated with cleanup and debris removal.

84.     Pursuant to the policy of insurance issued by the Plaintiff to its insured, Plaintiff has made payments to its insured in the total amount of $267,229.86 as a result of the loss described above.

85.     By virtue of the aforesaid payments and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably, and contractually subrogated to the rights of Plaintiff's Insured to the extent of such payments.

86.     In the event that Plaintiff becomes obligated to pay additional sums for the loss in the future, Plaintiff prays for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

**WHEREFORE**, Plaintiff respectfully requests this Court award it a judgment against Defendant, Hansgrohe, in the amount of $267,229.86, together with costs, attorney's fees, expenses, pre- and post- judgment interest and any other relief this Court deems just and proper

Plaintiff further demands a jury of twelve (12) persons to try this cause.

17

Respectfully submitted,

Gail Vaughn Ashworth, Esq. #10656
WISEMAN ASHWORTH LAW GROUP PLC
511 Union Street, Suite 800
Nashville, TN 37219-1743
(615)254-1877
gail@wisemanashworth.com

Hal J. Kleinman, Esq.
Robert A. Dengler, Esq.
*Pending Pro Hac Vice Admission*
LAW OFFICES OF ROBERT A. STUTMAN, P.C.
500 Office Center Drive, Suite 301
Fort Washington, PA 19034
(215) 283-1177
KleinmanH@StutmanLaw.com
DenglerR@StutmanLaw.com
Attorneys for Plaintiff USAA General
Indemnity Company

18